**Clarence Lasalle ROSE, Petitioner–Appellant,**

**v.**

**Michael S. EVANS, Respondent–Appellee.**

No. 07–55667.

United States Court of Appeals, Ninth Circuit.

Argued Aug. 3, 2009.

Resubmitted and Filed Feb. 14, 2011.

Peter Gold, San Francisco, CA, for Petitioner–Appellant.

Clarence Lasalle Rose, Soledad, CA, pro se.

Kenneth Norman Sokoler, Esquire, Deputy Attorney General, AGCA–Office of the California Attorney General, San Diego, CA, David Fredric Glassman, Esquire, Deputy Assistant Attorney General, AGCA–Office of the California Attorney General, Los Angeles, CA, for Respondent–Appellee.

Before: CANBY, WARDLAW and CALLAHAN, Circuit Judges.

MEMORANDUM *

Clarence Rose was convicted in California state court of first degree murder and related charges, and his conviction was affirmed on appeal. Rose thereafter launched a collateral attack on his conviction in the state courts, which ultimately resulted in an evidentiary hearing in Superior Court on his claims of ineffective assistance of counsel. *See Rose v. Superior Court*, 81 Cal.App.4th 564, 96 Cal.Rptr.2d 843 (Cal.Ct.App.2000). In ordering the evidentiary hearing, the Court of Appeal noted that Rose's lead private counsel was a recent California Bar admittee who had tried only one jury case. He was assisted by another attorney who had three years of experience. Neither attorney had ever defended a felony case. *Id.* at 846. After the ensuing evidentiary hearing, the Superior Court entered findings and conclusions that may be paraphrased as follows:

(1) There was no tactical reason for defense counsel not to conduct an investigation of the prosecution witnesses for possible bias, intoxication or confusion. Counsel did not recall whether he knew that he could have had an investigator appointed by the court. He did consult with previously assigned investigators and reviewed reports of witness interviews by those investigators. During the trial, defense counsel adduced on cross-examination the facts that the witnesses had consumed substantial amounts of alcohol prior to the shooting, that the incident occurred at night, and that the witnesses were frightened by the assault. During closing argument, counsel argued that the witnesses' alcohol consumption could have affected their ability to make an accurate identification. Both defense counsel also impeached the witnesses with prior inconsistent statements.

Rose introduced no evidence of bias on the part of the witnesses. A prior investigator testified that he attempted

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

to interview identification witnesses but they refused to be interviewed.

The failure to conduct a pretrial investigation of the witnesses did not deprive Rose of his right to present a meritorious defense.

(2) Defense counsel had no strategic reason not to call Rose's physician to testify to Rose's physical condition arising from a prior, unrelated shooting that allegedly caused Rose to limp. At the evidentiary hearing, Rose made no offer of proof as to what testimony the physician would have given.

In the absence of an offer of proof, the failure to call the physician could not be shown to have deprived Rose of a meritorious offense.

(3) Defense counsel did attempt to investigate allegations of police bias against Rose. He caused an *in camera* investigation of one officer's personnel file, which failed to reveal any indication of bias. He attempted to subpoena another officer but the police department refused the subpoena because the officer had retired. Counsel did not pursue the matter further.

Rose made no offer of proof as to what testimony the latter officer would have provided.

At trial, counsel elicited from Rose's father testimony suggesting bias by police against Rose.

The failure to investigate further did not deprive Rose of a meritorious defense.

(4) Defense counsel believed that it would have been helpful to have an eyewitness expert to testify. Lead counsel was unaware that an expert could have been appointed at no cost to Rose; secondary counsel was aware that an expert could have been appointed. An expert testified at the evidentiary hearing that poor lighting, stress, presence of a weapon, the absence of distinguishing physical characteristics, the presence of multiple people at the scene, and the fact that the identification is cross-racial all decrease the accuracy of an eyewitness identification.

At trial, prosecution witnesses were cross-examined about stress, alcohol consumption, lighting conditions, distances and "other factors" affecting eyewitness identification. It was also apparent that the identification was cross-racial. The jury was instructed on factors to consider in weighing eyewitness identifications, per California Jury Instruction [CALJIC] 2.92.

Rose was not deprived of a meritorious defense because of counsel's failure to call an eyewitness identification expert.

(5) Defense counsel considered challenging the photo lineup that was shown to the prosecution eyewitnesses, but did not do so. Lead counsel thought that there was something distinctive about Rose's photo in the lineup, but could not remember what it was. Secondary counsel speculated that there might have been something suggestive in the manner in which the photos were shown to the witnesses, but no evidence was produced to that effect. The photo display did not appear to be suggestive.

Rose was not denied a meritorious defense by the failure of defense counsel to challenge the photo lineup, or by the failure to insist on a live lineup.

The court concluded by pointing out that defense counsel had presented several witnesses that testified that Rose was not outside where the shooting occurred at the time in issue. The witnesses testified to facts tending to indicate that another gang member, "Al Dog," was the shooter. The court stated that the impeachment of these

defense witnesses did not demonstrate ineffective assistance. Finally, the court stated that defense counsel's failure to object to prosecution argument referring to gang membership was not prejudicial because the gang membership was in evidence and the argument was not improper. In summary, the court held that Rose had failed to demonstrate prejudice as a consequence of counsel's alleged deficiencies. It accordingly denied the petition for a writ of habeas corpus.

The Court of Appeal affirmed the court's order without opinion, with one justice noting dissent. The California Supreme Court subsequently denied Rose's petition for a writ of habeas corpus without opinion.

Rose then filed this petition for habeas corpus in the federal district court. The district court denied the petition, holding that Rose had not shown prejudice with regard to any of his claims of ineffective assistance of counsel. We granted a certificate of appealability.[1] We affirm the judgment of the district court.

There is no question that Rose's lead counsel was woefully inexperienced for conducting the defense of a charge as serious as murder. But Rose comes to federal court seeking a writ of habeas corpus to release him from state custody, and we cannot grant such a writ unless "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The applicable constitutional standard for establishing ineffective

assistance of counsel in violation of the Sixth Amendment is provided by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show that counsel's defective performance requires reversal of a conviction, a defendant must satisfy two requirements:

> First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687, 104 S.Ct. 2052. It is primarily because of failure to meet the second requirement—prejudice—that the state court denied collateral relief.

In addressing this state court ruling, we are constrained by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). AEDPA precludes us from granting habeas corpus relief as to any claim that was adjudicated on the merits by the state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Thus, even if we were to determine in our own analysis that Rose had shown sufficient prejudice to meet the second *Strickland* standard, we could not grant the writ of habeas corpus unless it was *unreasonable* for the state court to come to a different conclusion.

---

1. Our certificate permitted Rose to pursue 12 claims of ineffective assistance of counsel, arising from counsel's failure: (1) to conduct a pretrial investigation of prosecution witnesses; (2) to make an informed decision as to whether to have Rose's physician testify to his physical condition; (3) to investigate alleged bias of a police investigating officer; (4) to present expert testimony on eyewitness identification; (5) to challenge the photographic lineup; (6) to request appointment of an investigator; (7) to discover and present additional exculpatory witnesses; (8) to introduce evidence of police bias after his opening statement said he would; (9) to understand the basic rules of evidence; (10) to understand the process of calling witnesses; (11) to object to parts of the prosecutor's closing argument; and (12) to object to the imposition of an unlawful sentence.

"It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter,* — U.S. ——, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011).

■ We conclude that it was not unreasonable for the state court to conclude that Rose was not prejudiced by counsel's alleged errors. Rose's claims of prejudice were noticeably unsupported by evidence. For example, he contends that his counsel failed to investigate prosecution witnesses, and failed to search for additional witnesses. Yet in the collateral proceedings there was no showing as to what evidence might have been discovered in a thorough investigation, or what testimony the undiscovered witnesses might have given. The same is true of the failure to call Rose's physician, or to investigate more thoroughly claims of bias by police officers. There is no evidence in the record of what any missing testimony would have shown. Rose also claims that his counsel was insufficiently aware of the basic rules of evidence, such as hearsay, and other rules of trial procedure. Yet there is no showing of what harmful, inadmissible hearsay was admitted, or what materially favorable admissible evidence was excluded. In addition, Rose claims that his counsel was ineffective in failing to object to an impermissible portion of the sentence, but that error was corrected on appeal and cannot possibly have prejudiced Rose.

■ There are two claims of deficient performance on which Rose provided evidence to the state court. First, at the evidentiary hearing, he presented an expert on eyewitness testimony who would have been able to testify that the accuracy of eyewitness testimony is decreased by poor lighting, stress, presence of a weapon, the absence of distinguishing physical characteristics, the presence of multiple people at the scene, and the fact that the identification is cross-racial. This evidence might have been helpful, but we are not convinced that it was unreasonable for the state court to conclude that there was no "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

The jury was instructed in accordance with CALJIC No. 2.92, as follows:

In determining the weight to be given eye witness identification testimony, you should consider the believability of the eye witness as well as other factors which bear upon the accuracy of the witness' identification of the defendant, including, but not limited to, any of the following:

The opportunity of the witness to observe the alleged criminal act and the perpetrator of the act;

The stress, if any, to which the witness was subjected at the time of the observation;

The witness' ability, following the observation, to provide a description of the perpetrator of the act;

The extent to which the defendant either fits or does not fit the description of the perpetrator previously given by the witness;

The cross-racial or ethnic nature of the identification;

The witness' capacity to make an identification;

Evidence relating to the witness' ability to identify other alleged perpetrators of the criminal act;

Whether the witness was able to identify the alleged perpetrator in a photographic or physical lineup;

The period of time between the alleged criminal act and the witness' identification;

Whether the witness had prior contacts with the alleged perpetrator;

The extent to which the witness is either certain or uncertain of the identification;

Any other evidence relating to the witness' ability to make an identification. Defense counsel cross-examined the eyewitnesses concerning several of these factors and argued some of these factors (although not cross-racial identification) in his final argument.

Rose contends that the above instruction is no substitute for expert testimony on eyewitness identification because the instruction does not indicate which way each factor cuts. It was not unreasonable, however, for the state court not to require such explanation when the operation of the factors is relatively self-evident.

Finally, we previously have held that, because our precedent establishes that expert testimony on the unreliability of eyewitness testimony may be excluded without prejudice to defendants, it was also not prejudicial for defense counsel to fail to call such a witness. *Howard v. Clark*, 608 F.3d 563, 574 (9th Cir.2010). In light of *Howard* and all the circumstances of this case, we conclude that it was not unreasonable for the state court to rule that Rose was not prejudiced by the failure of his counsel to call an expert to testify regarding eyewitness identification.

■ The second item of substance that Rose introduced in the collateral hearing was the photographic lineup. The Superior Court stated that the photographic display did not appear to be suggestive. We have reviewed the photographic display and agree with that conclusion. The failure to challenge the display consequently did not prejudice Rose, or at least it was not unreasonable for the state court to draw this conclusion. The assertion of Rose's secondary counsel that the display may have been presented to the eyewitnesses in a suggestive manner was unsupported by any evidence, and it was not unreasonable for the state court to reject that speculation.

■ Rose contends that his counsel "promised" in his opening statement to introduce evidence of police bias and then did not produce it. The record does not substantiate a promise, but in any event some evidence of bias was introduced through the testimony of Rose's father. It was not unreasonable for the state court to deny claims of prejudice from this alleged error of counsel.

At Rose's request, we ordered supplemental briefing regarding Rose's claim that the last reasoned decision of the state courts was the Superior Court decision, which Rose contends failed properly to apply the *Strickland* prejudice standard. Rose therefore argues that no deference is due the state court rulings under AEDPA.

■ We are not convinced that the Superior Court's finding of no deprivation of a meritorious defense was inconsistent with *Strickland*'s prejudice standard, *see In re Harris*, 5 Cal.4th 813, 21 Cal.Rptr.2d 373, 400–01, 855 P.2d 391 (1993), but the issue of deference has been foreclosed by the Supreme Court's recent decision in *Richter*. The Superior Court's decision here was followed by unexplained denials of habeas corpus by the state Court of Appeal and the California Supreme Court. *Richter* squarely held that an unexplained denial of a writ of habeas corpus by the California Supreme Court is an adjudication on the merits that is entitled to deference under § 2254(d) unless "there is reason to think some other explanation for the state court's decision is more likely." *Richter*, 131 S.Ct. at 785. No other explanation has been offered here. It is not

necessary for the state court to cite or even be aware of the applicable cases of the United States Supreme Court; § 2254(d) still applies. *Id.* at 784.

Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.

*Id.* Because we have held that failure to show prejudice within the meaning of *Strickland* was sufficient reason for the California Supreme Court to deny relief, Rose's argument fails.

We have reviewed Rose's remaining arguments and find them to be without merit. The judgment of the district court denying Rose's petition for a writ of habeas corpus is

**AFFIRMED.**

**Lise PETRAUSKAS, Plaintiff–Appellant,**

v.

**COMMISSIONER SOCIAL SECURITY ADMINISTRATION, Defendant–Appellee.**

No. 09–35794.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 7, 2010.

Filed Oct. 18, 2010.

Meagan Aileen Flynn, Preston Bunnell & Flynn, LLP, Portland, OR, for Plaintiff–Appellant.

Daphne Banay, Leisa Wolf, Esquire, SSA–Social Security Administration, Office of the General Counsel, Seattle, WA, Adrian Lee Brown, Assistant U.S. Attorney, Office of the U.S. Attorney, Portland, OR, for Defendant–Appellee.

Before: TASHIMA, PAEZ and CLIFTON, Circuit Judges.

## MEMORANDUM *

Lise Petrauskas ("Petrauskas") appeals from the district court's affirmance of the final decision by the Commissioner of Social Security denying Petrauskas's application for disability insurance benefits under Title II of the Social Security Act. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we review de novo the district court's decision upholding the denial of benefits. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). We affirm.

■ First, the ALJ provided "specific, cogent reasons" for discounting Petrauskas's subjective complaints of pain and other symptoms. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir.2001). The ALJ discussed thoroughly the medical and other documentary evidence in the record and noted contradictions between Petrauskas's testimony regarding her daily life activities and the statements of Petrauskas's husband. This evidence is sufficient to support the ALJ's determination

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

that Petrauskas's subjective reporting was not entirely credible. *See Bray*, 554 F.3d at 1227 ("In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors.").

■ Second, substantial evidence supports the ALJ's determination that Petrauskas retains the residual functional capacity to do a limited range of light work. The ALJ provided "specific and legitimate reasons," supported by substantial evidence, for rejecting Dr. Bell's controverted opinion that Petrauskas is completely disabled. *Id.* at 1228.

Although Dr. Bell treated Petrauskas on a number of occasions, the ALJ noted that Dr. Bell's assessment was inconsistent with the neurological findings from his own examinations. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir.2003) (holding that an ALJ may reject a treating physician's opinion regarding the claimant's limitations when the limitations are not supported by his own office notes). Moreover, the ALJ noted that Dr. Bell's opinion was controverted by Dr. Miller, who did not believe that Petrauskas was disabled and encouraged her to exercise by walking and swimming.

■ Third, Petrauskas contends that the ALJ erred in discrediting her husband's testimony, describing her severe pain and limited ability to function in a work setting. The ALJ provided germane reasons for giving this lay witness testimony limited weight, noting inconsistencies in Petrauskas's husband's statements regarding his wife's level of functioning. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir.2005). Further, the ALJ noted medical evidence and other documentary evidence, including treatment notes that described Petrauskas's daily activities, and determined that her husband's statements conflicted with the medical evidence. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir.2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence."). The ALJ did not err in discrediting Petrauskas's husband's testimony.

■ Fourth, substantial evidence supports the ALJ's residual functional capacity ("RFC") determination. The ALJ properly based his RFC determination on Petrauskas's limitations that were supported by objective medical evidence. In assessing Petrauskas's RFC, the ALJ did not rely on Petrauskas's subjective complaints, which were not entirely credible. *See Bayliss*, 427 F.3d at 1217 (finding RFC determination proper where "the ALJ took into account those limitations for which there was record support that did not depend on [the claimant's] subjective complaints" lacking credibility). The ALJ properly assessed Petrauskas's standing limitations and adopted the opinion of vocational experts Dirkse and Beckman that Petrauskas was essentially limited to performing simple, routine and repetitive tasks. *See id.*

■ Finally, Petrauskas's challenge to the ALJ's rejection of her vocational evaluation also fails. The ALJ properly discredited the findings of the vocational evaluation in light of the testimony of Dr. McDevitt, who reported that the evaluation was primarily based on the self-reporting of Petrauskas. Moreover, as vocational experts, Dirkse and Beckman did not have the expertise to provide a medical opinion as to the severity of Petrauskas's impairments. "Lay testimony as to a claimant's symptoms is competent evidence which the Secretary must take into account ... [but] medical diagnoses are beyond the competence of lay witnesses and therefore do not constitute competent

**10**

evidence." *Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th Cir.1996), discussing *Dodrill v. Shalala,* 12 F.3d 915, 919 (9th Cir. 1993) (emphasis omitted).

**AFFIRMED.**

The UNITED STATES of America ex rel. and State of California ex rel. Stanley D. MOSLER, Plaintiffs–Appellants,

v.

CITY OF LOS ANGELES, a municipal corporation, etc.; et al., Defendants–Appellees.

No. 09–56040.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 2010.

Filed Dec. 22, 2010.

Milford W. Dahl, Jr., Esquire, Rutan & Tucker, LLP, Costa Mesa, CA, Matthew Edward Hess, The Kick Law Firm, APC, James T. Grant, Law Offices of James T. Grant, Los Angeles, CA, Arnold M. Auerhan, U.S. Department of Justice, Washington, DC, for Plaintiffs–Appellants.

Christopher B. Bobo, Esquire, Office of the City Attorney, San Pedro, CA, Melissa K. Eaves, Sheppard Mullin Richter & Hampton LLP, Marc Scott Harris, Esquire, Scheper Kim & Overland LLP, Kristen A. Rowse, Mayer Brown, LLP, Los Angeles, CA, Elizabeth P. Beazley, Keesal, Young & Logan, Long Beach, CA, Stephanie M. Byerly, Esquire, Roman E. Darmer, II, Esquire, Jennifer Renee Bagosy, Esquire, Howrey LLP, Irvine, CA, for Defendants–Appellees.

Before: PREGERSON, RIPPLE,* and GRABER, Circuit Judges.

## MEMORANDUM **

Relator Stanley Mosler, suing on behalf of the United States, appeals the district court's dismissal of his qui tam action. On de novo review, *United States ex rel. Aflatooni v. Kitsap Physicians Servs.*, 163 F.3d 516, 520 (9th Cir.1999), we affirm.

Under the False Claims Act, a court lacks subject matter jurisdiction over any qui tam action "based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing"; in various kinds of governmental or administrative reports, hearings, or investigations; or in "the news media"; unless the relator is the "original source" of the publicly disclosed information. 31 U.S.C. § 3730(e)(4) (2002). The California analogue is nearly identical. Cal. Gov't Code § 12652(d)(3). For that reason, California courts look to federal decisions to interpret the public disclosure provision of the state statute. *State ex rel. Bowen v. Bank of Am. Corp.*, 126 Cal.App.4th 225, 23 Cal. Rptr.3d 746, 758 n. 11 (2005).

The allegations underlying Relator's complaint were publicly disclosed before he filed suit in 2002, in two ways. First, Relator's written testimony, submitted during a 2001 public hearing of the Army Corps of Engineers, contained sections entitled "Port Breached Agreement with Federal Government and People of California by Converting Pier 400 to Megacontainer Terminal" and "The Cover Up." Those sections lay out allegations substantially similar to those contained within Relator's complaint. Second, an article in *Random Lengths News*, dated January 3, 2002, quoted Relator and reported essentially the same allegations on the part of "outraged" local residents.

Relator was not the original source of any of the information disclosed, under the standard explained in *Wang ex rel. United States v. FMC Corp.*, 975 F.2d 1412, 1417 (9th Cir.1992). His knowledge of the allegedly fraudulent transactions was neither direct nor independent of the public disclosures. The district court found that Relator relied on newspaper articles reporting Pier 400's change in use. The district court also found that, in formulating his allegations, Relator relied on documents he obtained from the Port and the Los Angeles District Office of the Army Corps of Engineers. Those findings are not clearly erroneous. *See United States ex rel. Biddle v. Bd. of Trs. of Leland Stanford, Jr. Univ.*, 161 F.3d 533, 535 (9th Cir.1998) (noting that we review for clear error a finding of fact relevant to the determination of subject matter jurisdiction).

In summary, the district court lacked subject matter jurisdiction because the allegations underlying the complaint were publicly disclosed before Relator filed suit and because Relator is not the original source of the relevant information. Accordingly, the district court properly dismissed this qui tam action.

AFFIRMED.

---

* The Honorable Kenneth F. Ripple, Senior United States Circuit Judge for the Seventh Circuit, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36–3.

OPTIONAL CAPITAL, INC., a Korean corporation f/k/a Optional Ventures Korea, Inc., Plaintiff–Appellant,

v.

Kyung Joon KIM, an individual, aka Chris Kim, aka Christopher Kim, aka K.J. Kim; et al., Defendants–Appellees.

No. 08–56285.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 3, 2010.

Filed Jan. 4, 2011.

Andrew N. Chang, Esquire, Esner, Chang & Ellis, Glendale, CA, Mary Lee, Law Offices of Mary Lee, Ralph Rogari, Rehm & Rogari, Los Angeles, CA, for Plaintiff–Appellant.

\* The Honorable Kenneth F. Ripple, Senior United States Circuit Judge for the Seventh Circuit, sitting by designation.

\*\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. Optional attached four decisions of the district court to its notice of appeal. However,

Eric Honig, Esquire, Law Offices of Eric S. Honig, Marina Del Rey, CA, for Defendants–Appellees.

Before: PREGERSON, RIPPLE,\* and GRABER, Circuit Judges.

## MEMORANDUM \*\*

Optional Capital, Inc. ("Optional") appeals three decisions [1] of the district court in an action that arises out of the allegedly fraudulent activity of Mr. Kyung Joon "Christopher" Kim ("Mr. Kim") with the help of Ms. Bora Lee, Ms. Erica Kim, First Stephora Avenue, Inc. ("First Stephora") and Alexandria Investments, LLC ("Alexandria") (collectively, "Kim Claimants"). The primary issue on appeal is the correctness of the district court's grant of the Kim Claimants' motion for judgment as a matter of law or, in the alternative, for new trial thereby setting aside a jury verdict in favor of Optional. The two other decisions by the district court on appeal are its denial of Optional's Motion for Rule 59(e) or Rule 60 Relief and its exclusion of evidence offered by Optional. For the reasons that follow, we affirm in part and reverse in part the judgment of the district court and remand for proceedings consistent with this order.

in its brief, Optional does not contest the district court's denial of its motion in limine decided on July 5, 2006. Optional has waived this issue, so we do not address it. *See Seven Words LLC v. Network Solutions*, 260 F.3d 1089, 1097 (9th Cir.2001) (noting "our long-standing rule that we do not consider arguments not raised in the briefs").

## I

We review de novo a district court's decision to grant judgment as a matter of law. *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1081 (9th Cir.2009).

### A.

■ There was insufficient evidence to support the jury verdict on the fraudulent concealment claim because Optional failed to establish harm. Cal. Civ.Code §§ 1709, 1710(3); *Melanson v. United Air Lines, Inc.*, 931 F.2d 558, 563 (9th Cir.1991) (applying California law). Optional asserts that it unknowingly sold stock to the Kim Claimants and that the Kim Claimants profited from later selling that stock. But those assertions are unsupported by the evidence. Optional concedes that Mr. Kim paid approximately $30 million, roughly 38 billion Won, for the stock sold by Optional. The testimony of Optional employee Hong Chan Lim verifies that Optional received around $30 million from Mr. Kim for the stock. Optional claims that the Kim Claimants profited from selling Optional stock, allegedly receiving $33 million upon selling the stock. As support for the $33 million, Optional points to Exhibit 508, which includes wire transfers made from various shell companies controlled by the Kim Claimants to Next Step and Zoic. Optional has not provided, however, a foundation for why the wired amounts to Next Step and Zoic reflect exclusively sales from Optional stock. Mr. Kim stated that the wired amounts included disposition of Optional stock *and* other assets, such as shares in EZ.com. Exhibit 508 therefore does not support the contention that the Kim Claimants profited from selling Optional stock. Because Optional failed to show it suffered harm, the evidence is insufficient to support the jury's verdict and damages award for fraud by concealment.

### B.

As in the case of its fraudulent concealment claim, Optional cannot show that it suffered harm from the defendants' fraudulent misrepresentations. Cal. Civ.Code §§ 1709, 1710(2). Accordingly, we affirm the district court's decision to grant judgment as a matter of law in favor of the Kim Claimants on the fraud claims.

### C.

■ Optional has, however, presented sufficient evidence to support the jury's verdict on the conversion claim. As a preliminary matter, Optional's claim of conversion is not waived. Rule 50(b) renews a prior Rule 50(a) motion, and a movant cannot assert a ground not raised in the Rule 50(a) motion. Fed.R.Civ.P. 50(b); *see also Exxon Shipping Co. v. Baker*, 554 U.S. 471, 128 S.Ct. 2605, 2617 n. 5, 171 L.Ed.2d 570 (2008). The nonmoving party, however, does not face similar restrictions and is not limited only to the defenses raised in the Rule 50(a) motion. The decision on appeal is the district court's grant of the post-trial Rule 50(b) motion, and Optional, in its opposition to the Rule 50(b) motion, clearly did contend that evidence existed to support conversion.[2]

To establish conversion, Optional must show that: (1) Optional had ownership or a right to possess the property at the time of conversion; (2) the Kim Claimants wrongfully took possession or prevented Optional from having possession of the property; and (3) resulting damages. *Mindys Cos-*

---

**2.** We also note that the district court denied the Kim Claimants' Rule 50(a) motion for *all* of Optional's claims, finding no waiver of the conversion claim.

*metics, Inc. v. Dakar,* 611 F.3d 590, 601 (9th Cir.2010) (applying California law).

With respect to the first requirement, Lim testified that Optional had 19.2 billion Won in April 2001 before the takeover by Mr. Kim. Then, the five capital increases from May to December 2001 raised approximately another 38 billion Won for Optional. Given that the revenue was raised from a stock sale, a jury could reasonably find that Optional owned the money in its account.

Optional also has evidentiary support for the second requirement: that the Kim Claimants wrongfully took possession of the property. Exhibit 506 provides records of twenty-one transaction slips made in 2001, recording withdrawals and receipts. Three of the slips reflect payments made to Mr. Kim, and ten slips show payments to Ms. Bora Lee. In testifying about one specific transaction slip, Nam Jin Lee, a former low-level employee at Optional, said that, on one occasion, Mr. Kim directed her to deposit 500 million Won into the account of LRIC, which Mr. Kim controlled. After Nam Jin Lee made the deposit, she filled out a transaction slip, noting the payment as a "one time temporary advance payment" for Mr. Kim. Lim also stated that, although the five capital increases raised a total revenue of around 38 billion Won, none of that money was found in Optional's account during an audit in 2002. Hwang Ook Yang, an employee of Optional and the current co-CEO, stated that he investigated Optional's accounts for evidence of any new investment by Optional in 2001, which would account for the missing 38 billion Won. When asked whether he found any investment activity, Yang replied, "To my knowledge there was hardly any new investment." The circumstantial evidence is sufficient to support a jury's finding that the Kim Claimants wrongfully took possession of Optional's property.

The Kim Claimants attempt to rebut any wrongdoing by claiming that Optional consented to removal of the funds. It notes that the transaction slips had boxes for the accountant, funding person, person in charge, department head and president to initial and approve the transfer. None of the twenty-one transaction slips in Exhibit 506 is initialed by the department head or the president. Many others also are missing another signature, usually that of the fund person or person in charge. Furthermore, even if the president or department head had approved the transactions, the Kim Claimants offer no evidence of board approval. The lack of board approval is sufficient to show that Optional did not consent to the withdrawals.

The evidence supporting the final requirement of damages is clear. Optional's license to trade on the market was revoked due to its lack of capital. The withdrawals not only deprived Optional of its funds, but also directly caused Optional to lose its trading license. Optional was harmed, and the Kim Claimants' wrongful action was a substantial cause of that harm.

The jury's award of damages for conversion is also supported by the evidence. The jury awarded Optional 37.1 billion Won for its conversion claim. At trial, Lim testified that "38 billion Won, approximately, to [his] recollection" was missing from Optional. Moreover, the total of all twenty-one transaction slips in Exhibit 306 yields a figure of 37.4 billion Won, close to the amount awarded by the jury and stated by Lim. Although eight of the twenty-one transaction slips do not show Mr. Kim or Ms. Bora Lee as recipients, Optional's allegation is that the Kim Claimants transferred money from Optional into the accounts of companies that the Kim Claimants controlled. Thus, a jury reasonably

could find, based on the circumstantial evidence, that even the transaction slips that did not note Mr. Kim or Ms. Bora Lee as recipients reflected part of the amount converted. The jury's damages award of 37.1 billion Won is supported by Lim's testimony and the transaction slips in Exhibit 506.

There is circumstantial evidence sufficient to support the jury's verdict and damages award for conversion. We reverse the district court's judgment as a matter of law and direct the district court to reinstate the jury verdict for conversion.

## II

Because we set aside the judgment as a matter of law on the conversion claim, we must consider two additional matters regarding the conversion claim only: whether substantial evidence supported the jury verdict finding Alexandria and First Stephora liable as defendants and whether the district court erred in granting, in the alternative, a new trial on the conversion claim.

### A.

■ Alexandria and First Stephora correctly were included as defendants in the conversion claim. Optional has shown that the Kim Claimants controlled Alexandria and First Stephora. Given the Kim Claimants' exclusive control of the two companies and their past practice of using shell companies, a jury could find that Alexandria and First Stephora were involved in a conversion scheme to deprive Optional of its property.

### B.

■ We reverse the district court's grant, in the alternative, of a new trial on the conversion claim. The standard of review for a district court's granting of a

new trial is abuse of discretion. Even if substantial evidence exists to deny a Rule 50 motion, that "does not, however, prevent the court from granting a motion for a new trial . . . *if the verdict is against the clear weight of the evidence.*" *Landes Constr. Co. v. Royal Bank of Can.*, 833 F.2d 1365, 1371 (9th Cir.1987) (emphasis added). When the district court has applied the correct legal rule, the district court's resolution of a motion to grant a new trial is an abuse of discretion if it is "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir.2009) (en banc) (internal quotation marks omitted).

The Kim Claimants introduced no evidence that supports a contrary explanation of Optional's loss of its money. Under these circumstances, we cannot say that the jury verdict is contrary to the weight of the evidence. There is simply no evidence of record to weigh against the evidence submitted by Optional, and so the district court's grant of a new trial is "without support in inferences" from the record. *Hinkson*, 585 F.3d at 1262; *see also Tortu*, 556 F.3d at 1084; 12 James Wm. Moore et al., *Moore's Federal Practice* § 59.13[2][f][iii] (3d ed. 2000) ("A new trial is warranted only if the verdict is so clearly against the weight of the evidence as to amount to a manifest miscarriage of justice.").

## III

We affirm the two additional decisions of the district court raised by Optional on appeal: the denial of Optional's motion for reconsideration and the exclusion of three pieces of evidence offered by Optional.

■ First, the district court did not abuse its discretion in denying Optional's

motion for reconsideration. *See M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1086 (9th Cir.2005). Mr. Kim's conviction is not new evidence because Optional learned of the conviction nearly a month prior to the district court's decision to grant judgment as a matter of law in favor of the Kim Claimants. *See Feature Realty, Inc. v. City of Spokane*, 331 F.3d 1082, 1093 (9th Cir.2003). The Korean proceedings also do not preclude the litigation here because the issues litigated in Korea were not identical. *See Resolution Trust Corp. v. Keating*, 186 F.3d 1110, 1116 (9th Cir.1999).

■ Nor did the district court abuse its discretion in excluding three pieces of evidence offered by Optional. *See United States v. Bonds*, 608 F.3d 495, 512 (9th Cir.2010). The court acted well within its discretion in excluding the expert report and testimony of Yong In Lee. Expert testimony can be excluded when a party has untimely designated an expert. *See Quevedo v. Trans–Pac. Shipping, Inc.*, 143 F.3d 1255, 1258 (9th Cir.1998). Optional does not provide evidence that the report was designated in a timely manner, and the record suggests otherwise. After the discovery cut-off date for experts, Optional designated Yong In Lee as an expert, but the district court did not reopen or extend discovery.

■ The district court also acted within its discretion when it excluded information from the Korean Financial Supervisory Service's Data Analysis, Retrieval and Transfer system ("DART") because of a lack of authenticity on the ground of hearsay. Optional claims that information from DART is admissible under Federal Rule of Evidence 901(b)(7). In support of that argument, however, Optional only analogizes DART to the Securities and Exchange Commission's Electronic Data Gathering, Analysis and Retrieval system

without providing further support for how the information from DART meets the requirements of Rule 901(b)(7).

Optional also fails to establish that the district court improperly excluded Exhibit 507. It offers no citation or reference in its brief to any decision in which the district court excluded Exhibit 507. Moreover, in Optional's notice of appeal, none of the attached orders contain a decision excluding Exhibit 507. Optional has failed to carry its burden on appeal. *See* 9th Cir. R. 30–1.4(a)(iv), (v) ("[T]he excerpts of record shall include any opinion, findings of fact or conclusions of law relating to the judgment or order appealed from" and "any other orders or rulings, including minute orders, sought to be reviewed.").

AFFIRMED in part, REVERSED and REMANDED in part. The parties shall bear their own costs of this appeal.

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Johnathon James BARNETT, aka
Jonathan James Barnett,
Defendant–Appellant.**

**No. 10–30116.**

United States Court of Appeals,
Ninth Circuit.

18

Submitted Jan. 12, 2011.*

Filed Jan. 14, 2011.

George J.C. Jacobs, III, Esquire, Assistant U.S. Attorney, USSP–Office of the U.S. Attorney, Spokane, WA, for Plaintiff–Appellee.

Stephen R. Hormel, Hormel Law Office, Spokane Valley, WA, for Defendant–Appellant.

Before: GRABER, FISHER, and M. SMITH, Circuit Judges.

MEMORANDUM **

Defendant Johnathon Barnett timely appeals from the district court's denial of his motion to suppress evidence. Defendant argues that a police officer stopped him without reasonable suspicion and searched his truck without probable cause. Reviewing de novo, *United States v. Borowy*, 595 F.3d 1045, 1047 (9th Cir.2010) (per curiam), *cert. denied*, —— U.S. ——, 131 S.Ct. 795, 178 L.Ed.2d 533 (2010), we affirm.

The police officer had reasonable suspicion to stop Defendant. *See United States v. Hensley*, 469 U.S. 221, 229, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985) ("[I]f police have a reasonable suspicion, grounded

* The panel unanimously concludes this case is suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).

** This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36–3.

in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then a *Terry* [1] stop may be made to investigate that suspicion."). The officer noticed Defendant's truck parked at a convenience store within a few miles of an armed robbery that had taken place just two hours before. Defendant's truck, like the robber's, was a white, older model 1/4 ton pick-up with rust spots and its license plate began with an "A." Defendant, like the robber, was a white male, 6′0 to 6′2 tall, with dark hair and a goatee. Under the totality of the circumstances, the officer had a reasonable suspicion that Defendant committed the robbery.

■ The police officer also had probable cause to think that Defendant had illegal drugs in his truck when she searched it. After a search of Defendant's person, which Defendant does not challenge, the officer found two vials of a kind commonly used to store illegal drugs. Inside of one of the vials, the officer found a white residue. That evidence gave the officer probable cause to think that there were more drugs in the truck. Under the automobile search exception, the officer therefore could conduct a warrantless search of Defendant's truck for drugs. *See United States v. Brooks,* 610 F.3d 1186, 1193 (9th Cir.2010) ("Under the automobile exception to the warrant requirement, police may conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains evidence of a crime.").

AFFIRMED.

**UNITED STATES of America,**
**Plaintiff—Appellee,**

v.

**Lawrence John SHEEHAN,**
**Defendant—Appellant.**

No. 09–30396.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 5, 2010.

Filed Jan. 27, 2011.

---

1. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Marcia Kay Hurd, Esquire, Assistant U.S., Office of the U.S. Attorney, for Plaintiff–Appellee.

John Rhodes, Esquire, Assistant Federal Public Defender, Federal Defenders of Montana, Missoula, MT, for Defendant–Appellant.

Before: THOMAS and M. SMITH, Circuit Judges, and HOGAN, District Judge.*

#### MEMORANDUM **

Lawrence John Sheehan (Appellant) appeals his 180–month sentence imposed consecutively to a prior state-court sentence. Appellant contends that his state-court incest conviction was the basis for an increase in the offense level for his federal offense, Transportation of a Minor in violation of 18 U.S.C. § 2423(a), and that the district court therefore should have imposed a concurrent sentence under Sentencing Guideline section 5G1.3(b).

### DISCUSSION

Because the factual and procedural history are familiar and not disputed, they will not be recounted here.

* The Honorable Michael R. Hogan, United States District Judge for the District of Oregon, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

3. Subsection (a) applies only if the offense was committed while a defendant was serving a term of imprisonment;

Subsection (b) applies when "a term of imprisonment resulted from another offense that is relevant conduct to the instant

*1. Standard of Review:*

Review of a district court's interpretation and application of the Guidelines is *de novo. United States v. Redman,* 35 F.3d 437, 438 (9th Cir.1994).

*2. U.S.S.G. § 5G1.3*

Sentencing Guideline section 5G1.3 applies when a defendant is subject to one or more undischarged terms of imprisonment at the time of federal sentencing and governs the imposition of concurrent or consecutive sentences.[3] The district court found that Appellant's prior offense fit the first part of the section 5G1.3(b) test as relevant conduct, but "the second aspect of it does not exist in this case," because the offense was not the basis for an increase in the offense level.

This finding allowed the sentence to be concurrent, partially concurrent, or consecutive, under U.S.S.G. § 5G1.3(c), and resulted in "a sentence of 15 years that is consecutive to the state sentence with no credit for time served." § 5G1.3(c). Additionally, on October 30, 2009, the district court issued specific findings with regard to its reasoning on the section 5G1.3 issue, stating that while the prior state incest conviction was relevant conduct, it was *not* the basis for an increase in Appellant's offense level for the federal transportation

offense of conviction ... and that was the basis for an increase in the offense level for the instant offense," and results in the sentences being run concurrently; and

Subsection (c) applies when neither (a) nor (b) applies, stating: "In any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." 2003 U.S.S.G. § 5G1.3(a), (b) and (c).

crime. "The increase simply required the transporter to be a parent of the victim and thus was satisfied by the offense of conviction itself, not the relevant conduct." *See* U.S.S.G. § 2G2.1(b)(1) and (2).

The district court's decision to impose a consecutive sentence therefore was not an abuse of discretion.

**AFFIRMED.**

**MOE TIN–U, Petitioner,**

v.

**Eric H. HOLDER, Jr., Attorney General, Respondent.**

**No. 06–72328.**

United States Court of Appeals, Ninth Circuit.

Submitted Nov. 2, 2010.*

Filed Jan. 31, 2011.

Marvin M. Gong, Dorothy A. Harper, Law Offices of Harper & Gong, Los Angeles, CA, for Petitioner.

Aliza Bessie Alyeshmerni, Paul Fiorino, Senior Litigation Counsel, OIL, U.S. Department of Justice, Civil Division/Office of Immigration Litigation, Washington, DC, Chief Counsel ICE, Office of the Chief Counsel, Department of Homeland Security, San Francisco, CA, for Respondent.

Before: RAWLINSON and M. SMITH, Circuit Judges, and JONES, District Judge.**

MEMORANDUM ***

Petitioner Moe Tin–U, a native and citizen of Burma, seeks review of a Board of

---

\* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

\*\* The Honorable Robert Clive Jones, United States District Judge for the District of Nevada, sitting by designation.

\*\*\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36–3.

Immigration Appeals (BIA) order denying his application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). As the facts and procedural history are familiar to the parties, we do not recite them here except as necessary to explain our disposition. We affirm.

We have jurisdiction to review the timeliness of Petitioner's application for asylum and the exceptional circumstances exception. *Husyev v. Mukasey,* 528 F.3d 1172, 1179–80 (9th Cir.2008). Petitioner failed to file his application for asylum within one year after the date of his arrival in the United States. 8 U.S.C. § 1158(a)(2)(B). Petitioner did not show that he had extraordinary circumstances justifying his five-month delay in filing his petition for asylum upon expiration of his visa. *See Toj–Culpatan v. Holder,* 612 F.3d 1088, 1090–91 (9th Cir.2010).

The BIA did not err in ruling that Petitioner failed to show a clear probability that he would be subject to future persecution because he is gay or because he expressed his political opinions. *See INS v. Stevic,* 467 U.S. 407, 429–30, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984). Further, although Petitioner may be arrested on his return for failing to maintain a passport, he did not prove that such arrest will more likely than not result in torture in contravention of the CAT. *See Ahmed v. Keisler,* 504 F.3d 1183, 1200–01 (9th Cir.2007) (holding that even though petitioner suffered persecution by being arrested and beaten on account of his political opinions, such conduct did not rise to the level of torture).

**PETITION DENIED.**

Ron MOSLEY, Petitioner–Appellant,

v.

S. OROSKI, Respondent–Appellee.

Ron Mosley, Petitioner–Appellant,

v.

S. Oroski, Respondent–Appellee.

Nos. 08–15327, 08–15389.

United States Court of Appeals, Ninth Circuit.

Jan. 31, 2011.

David Shapiro, Oakland, CA, for Petitioner–Appellant.

Ron Mosley, San Quentin, CA, pro se.

Heather M. Heckler, Esquire, Deputy Assistant Attorney General, AGCA–Office of the California Attorney General, Sacramento, CA, for Respondent–Appellee.

D.C. No. CV–05–04260–TEH, Northern District of California, San Francisco.

Before: ALARCÓN and RYMER, Circuit Judges.

In light of the Supreme Court's decision in *Swarthout v. Cooke,* —— U.S. ——, 131 S.Ct. 859, 178 L.Ed.2d 732 (2011) (per curiam), the disposition filed on November 24, 2010 is withdrawn. Further proceedings are stayed pending final resolution of *Cooke v. Solis,* 606 F.3d 1206 (9th Cir. 2010), and *Clay v. Kane,* 384 Fed.Appx. 544 (9th Cir.2010), in this court. The parties are requested to file a notice memorandum with the Clerk of this court as

soon as decisions have been rendered in these cases.

**Juan Jose DELGADO–MEDINA, Petitioner,**

v.

**Eric H. HOLDER, Jr., Attorney General, Respondent.**

No. 06–73419.

United States Court of Appeals, Ninth Circuit.

Submitted Jan. 25, 2011.[*]

Filed Jan. 31, 2011.

Michael S. Cabrera, Esq., Huntington Park, CA, for Petitioner.

CAC–District Counsel, Esq., Office of the District Counsel Department of Homeland Security, Los Angeles, CA, Ronald E. Lefevre, Chief Counsel, Office of the District Counsel Department of Homeland Security, San Francisco, CA, Richard M. Evans, Esq., Virginia Lum, U.S. Department of Justice Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before: KLEINFELD, LUCERO,[**] and GRABER, Circuit Judges.

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

[**] The Honorable Carlos F. Lucero, Circuit Judge for the Tenth Circuit, sitting by designation.

ORDER[***]

Respondent's Unopposed Motion to Remand the case to the Board of Immigration Appeals ("BIA") is GRANTED.

The BIA shall reconsider its June 8, 2006 decision in light of *Sinotes–Cruz v. Gonzales,* 468 F.3d 1190 (9th Cir.2006). The BIA may direct the parties to file additional briefs, and the parties may seek leave of the BIA to file such additional briefs as they deem appropriate.

Petitioner's removal is stayed pending a decision in this matter by the BIA. Parties will bear their own costs, expenses, and attorneys' fees.

A certified copy of this order sent to the BIA shall constitute the mandate of this court.

REMANDED.

**Ruben NAVA, Petitioner–Appellant,**

v.

**Brian HAWS, Respondent–Appellee.**

No. 08–16201.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 30, 2010.

Filed Jan. 31, 2011.

[***] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

Ruben Nava, Corcoran, CA, pro se.

Jeremy Friedlander, Deputy Attorney General, AGCA—Office of the California Attorney General, San Francisco, CA, for Respondent–Appellee.

Before: B. FLETCHER, TALLMAN and RAWLINSON, Circuit Judges.

## MEMORANDUM *

Ruben Nava appeals the district court's denial of his petition for writ of habeas

* This disposition is not appropriate for publication and is not precedent except as provided

corpus sought on due process and Eighth Amendment grounds. We have jurisdiction under 28 U.S.C. §§ 1291, 2253(a). We affirm.

■ Nava argues that the California Court of Appeal unreasonably concluded that the term "location" in the California sex offender registration statute at the time of his conviction was not unconstitutionally vague as applied to him and that the trial court's failure to define "location" for the jury did not deprive him of due process and a fair trial.

The California Court of Appeal has held that the term "location," as used in certain provisions in Cal.Penal Code § 290 in reference to a transient offender, is unconstitutionally vague. *People v. North*, 112 Cal.App.4th 621, 633, 5 Cal.Rptr.3d 337 (2003). Those provisions, however, are inapplicable to Nava, who was alleged to have a residence. Although the term "location" was included in the jury instruction spelling out the elements of the crime, it was done to explain the meaning of the term "residence" in the context of Nava's spending at least some of his time living on a tent site rather than in a more traditional structure. There is nothing to suggest that the jury applied the jury instructions in a constitutionally suspect manner, i.e., that the jurors believed that they could convict Nava even if he did not have a residence. *See Middleton v. McNeil*, 541 U.S. 433, 437, 124 S.Ct. 1830, 158 L.Ed.2d 701 (2004) ("[N]ot every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation."). Furthermore, it is uncontested that Nava resided in San Mateo County during the relevant time period, and that he failed to register with any of the authorities while within that jurisdiction as he was required to do under section 290.

■ Whether a term in a jury instruction requires definition depends on whether the term expresses a concept within a juror's ordinary experience. *United States v. Tirouda*, 394 F.3d 683, 689 (9th Cir.2005). Here, the term "location" was not a separate element of the section 290(a)(1)(A) charge against Nava and it was consistently used throughout the trial as synonymous with "residence." An instruction defining "location" was not necessary for the jury to understand the elements of the charged offense. *See Apprendi v. New Jersey*, 530 U.S. 466, 477, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); *United States v. Gaudin*, 515 U.S. 506, 511, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995).

■ Nava also argues that the California Court of Appeal unreasonably concluded that his sentence of 26 years to life under California's Three Strike Law does not violate the Eighth Amendment. He argues that his failure to register is a nonviolent and regulatory crime and that the gravity of the offense is far outweighed by the harshness of the penalty. Nava relies on *Gonzalez v. Duncan*, 551 F.3d 875 (9th Cir.2008), and *People v. Carmony*, 127 Cal.App.4th 1066, 26 Cal.Rptr.3d 365 (2005), where sentences of 25 years to life for failure to update annually one's registration under Cal.Penal Code § 290(a)(1)(D) were declared cruel and unusual punishment in light of the regulatory nature of the offense and the fact that the offense does not in itself pose any danger to society. *Gonzalez*, 551 F.3d at 885, 887; *Carmony*, 127 Cal.App.4th at 1072–73, 26 Cal.Rptr.3d 365. These cases are inapposite. Nava was convicted of the more serious offense of failure to register as required by section 290(a)(1)(A). *See, e.g., Gonzalez*, 551 F.3d at 884; *People v. Cluff*,

by 9th Cir. R. 36–3.

87 Cal.App.4th 991, 994, 1004, 105 Cal. Rptr.2d 80 (2001). Also, Nava has a long and consistent record of criminal activity. The California Court of Appeal reasonably concluded that his sentence is not so disproportionate to the gravity of the offense that the punishment is cruel and unusual. *See Ewing v. California,* 538 U.S. 11, 20, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003); *Solem v. Helm,* 463 U.S. 277, 292, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).

Nava also raises several uncertified issues in his opening brief. *See* 9th Cir. R. 22–1(e). We decline to expand the certificate of appealability to include these issues. *See Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000); *United States v. Martin,* 226 F.3d 1042, 1046 (9th Cir.2000).

AFFIRMED.

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Lal BHATIA, Defendant–Appellant.**

No. 09–15890.

United States Court of Appeals,
Ninth Circuit.

Submitted Jan. 12, 2011.*

Filed Jan. 31, 2011.

---

* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Merry Jean Chan, Esquire, Office of the U.S. Attorney, San Francisco, CA, Stephen G. Corrigan, Assistant U.S. Attorney, Office of the U.S. Attorney, Oakland, CA, for Plaintiff–Appellee.

Lal Bhatia, Taft, CA, pro se.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

Before: HUG, SCHROEDER, and RAWLINSON, Circuit Judges.

MEMORANDUM **

Appellant Lal Bhatia (Bhatia) was convicted of mail fraud and money laundering. Bhatia challenges the district court's denial of his 28 U.S.C. § 2255 motion. Bhatia contends that his trial counsel provided ineffective assistance of counsel and that his money laundering convictions should be reversed pursuant to *United States v. Santos,* 553 U.S. 507, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008).

1. Bhatia's counsel was not ineffective for failing to file a motion to suppress evidence seized from Bhatia's residence, as any omissions in the search warrant affidavit regarding a civil lawsuit against Bhatia "would not have materially affected the probable cause determination." *United States v. Casteneda,* 511 F.3d 1246, 1251 (9th Cir.2008).

2. The district court correctly denied Bhatia's claim that his counsel failed to investigate and prepare a valid defense to the mail fraud charges. Bhatia's counsel provided an adequate defense that Bhatia lacked the requisite intent to defraud and his counsel's representation did not "fall[ ] below an objective standard of reasonableness." *Earp v. Cullen,* 623 F.3d 1065, 1074 (9th Cir.2010) (citation and internal quotation marks omitted).

3. The district court properly denied Bhatia's claim that his counsel was ineffective due to a lack of experience. *See Ortiz v. Stewart,* 149 F.3d 923, 933 (9th Cir.1998) ("In considering a claim of ineffective as-

sistance of counsel, it is not the experience of the attorney that is evaluated, but rather, his performance.") (citation and parentheses omitted).

■ 4. Assuming, without deciding, that it was improper for Bhatia's attorney to threaten to withdraw if Bhatia testified, Bhatia did not demonstrate that "there [was] a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" given the substantial evidence of Bhatia's guilt. *Earp*, 623 F.3d at 1074 (citations omitted).

■ 5. The failure of Bhatia's counsel to call additional witnesses, including a witness mentioned by counsel during his opening statement, did not constitute deficient performance, as any additional testimony would have been cumulative. *See Clabourne v. Lewis*, 64 F.3d 1373, 1382 (9th Cir.1995) ("[F]ailure to present cumulative testimony does not amount to ineffective assistance.") (citation and parentheses omitted). In any event, there was not "a reasonable probability that, but for counsel's alleged errors, the results in [Bhatia's] case would have been different." *Young v. Runnels*, 435 F.3d 1038, 1043 (9th Cir.2006) (citations omitted).

6. The Supreme Court's decision in *Santos* does not compel reversal of Bhatia's money laundering convictions, as his convictions were based on payments independent of the misrepresentations upon which his mail fraud convictions were premised. *See United States v. Bush*, 626 F.3d 527, 537 (9th Cir.2010).

■ 7. Bhatia's claim based on prosecutorial and judicial misconduct does not warrant expansion of the certificate of appealability as Bhatia has not "made a substantial showing of the denial of a constitutional right." *United States v. Cruz*, 423

F.3d 1119, 1120 (9th Cir.2005) (citations and internal quotation marks omitted).

**AFFIRMED.**

Steve **BENTLEY**, a single man and Thomas Ray Bentley, a married man, Plaintiffs–Appellants,

v.

**BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES, a principal law enforcement agency within the United States Department of Justice; et al., Defendants–Appellees.**

No. 09–16111.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 14, 2010.

Filed Jan. 31, 2011.

Vernon Edward Peltz, Esquire, Law Office of Vernon E. Peltz, Tucson, AZ, for Plaintiffs–Appellants.

Reid Charles Pixler, Assistant U.S. Attorney, USPX–Office of the U.S. Attorney, Phoenix, AZ, for Defendants–Appellees.

Before: KLEINFELD and THOMAS, Circuit Judges, and STAFFORD,* Senior District Judge.

### MEMORANDUM **

The district court did not abuse its discretion in taking judicial notice of the state court judgment. Fed.R.Evid. 201(b); *Lee*

---

* The Honorable William H. Stafford Jr., Senior United States District Judge for the Northern District of Florida, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36–3.

*v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir.2001).

■ Similarly, we now take judicial notice of the Arizona Court of Appeals' decision affirming Steve Bentley's criminal conviction for possession of the weapons. "We may take judicial notice of court filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir.2006). The facts as stated therein are dispositive.

■ The Arizona Court of Appeals' opinion confirms that Steve Bentley "admitted having a key to the storage locker on his key ring" and that "the access code to the storage facility ... [was] in his wallet." *State v. Bentley*, No. 1 CA–CR 09–0260, 2010 WL 2638504, at *1 (Ariz.Ct. App. July 1, 2010). Likewise, although the initial storage-locker agreement was signed solely by his father, Thomas Bentley, there was paperwork in Steve Bentley's automobile "evidencing that Bentley was vacating [this initial] Unit ... and transferring the account to Unit 2160. The paperwork identified [Steve] Bentley and his father as [its] authorized users." *Id.* at *2. The key, access code, and paperwork establish that Steve Bentley had access to and constructive possession of the weapons. *United States v. Cousins*, 427 F.2d 382, 384 (9th Cir.1970).

Ordinarily, we must accept a complaint's factual allegations as true and construe them in the light most favorable to the plaintiffs for the purposes of deciding a motion to dismiss. *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir.2002). "However, we need not accept as true allegations contradicting documents that are referenced in the complaint or that are properly subject to judicial notice." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir.2008). The doctrine of collateral estoppel bars us from re-litigating the factual dispute of whether Steve Bentley possessed the weapons. *See Reyn's Pasta*

*Bella*, 442 F.3d at 746 (quoting *Kourtis v. Cameron*, 419 F.3d 989, 994 (9th Cir. 2005)). The jury found beyond a reasonable doubt that Steve Bentley, not Thomas Bentley, was in possession of the forfeited weapons. *State v. Bentley*, No. 1 CA–CR 09–0260, 2010 WL 2638504, at *2 (Ariz.Ct. App. July 1, 2010).

Had the weapons been pledged as collateral to secure Thomas Bentley's loan to his son, then a possessory lien might compel a different result. *See United States v. Casterline*, 103 F.3d 76, 79 (9th Cir.1996) ("Ownership without physical access to, or dominion and control over, the firearm does not constitute possession. If the felon owns a firearm, but does not actually possess or have dominion and control over it, then he does not possess the firearm for purposes of 18 U.S.C. § 922(g)."). The pledgor does not possess the property he pawned, unless and until the pawnshop releases it. But Steve Bentley retained actual or constructive possession of the guns.

In light of Steve Bentley's previous convictions and admissions, he has no legal right to possess these weapons and they are therefore contraband. 18 U.S.C. § 922(g). We decline to accept the Bentleys' suggestion that the district court must allow them to amend, because no amendment could save their claim. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir.1998).

■ We also assume, without deciding, that the ATF's notice to the father, Thomas Bentley, was constitutionally inadequate. *Taylor v. Westly*, 488 F.3d 1197, 1201 (9th Cir.2007). But even if we treated the father as having made a timely claim against the ATF for the seized weapons, his claim would still fail because his alleged security interest, perfected neither by recording nor by possession, would be subordinate to the government's claim. A.R.S. § 47–9313. Nor can Thomas Bent-

ley fit within 18 U.S.C. § 983(d)'s "innocent owner" exception, because he had knowledge "of the conduct giving rise to forfeiture" when he allowed his son to possess or constructively possess the guns. 18 U.S.C. § 983(d)(2)(A)(i).

AFFIRMED.

WILLIAM STAFFORD, District Judge, concurring.

While I concur in the result reached by the majority, I write separately to explain why I think the district court should be affirmed.

On December 29, 2007, the Bureau of Alcohol, Tobacco, Firearms and Explosives (the "Bureau") seized 79 firearms from a storage room in Gilbert, Arizona. After receiving notice of administrative forfeiture proceedings against the seized property, Steve and Thomas Bentley, using the same law firm, filed separate claims with the Bureau, challenging the forfeiture and seeking return of the firearms. The Bentleys' claims were denied by the Bureau on the basis that the claims were not received before the statutory claim period expired. The Bentleys thereafter filed a complaint in federal district court, alleging that the Bureau failed to give them proper notice of seizure in violation of their due process rights. The district court dismissed the action without elaboration. Because our review is de novo, we can affirm the district court's dismissal on any ground supported by the record.

The Capital Asset Forfeiture Reform Act of 2000 ("CAFRA"), 18 U.S.C. § 983, sets forth "the exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute." *Id.* at § 983(e)(5). That remedy is limited as follows:

(1) Any person entitled to written notice in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute who does not receive such notice may file a motion to set aside a declaration of forfeiture with respect to that person's interest in the property, which motion shall be granted if—